**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION**

| | | |
|---|---|---|
| **MONIQUE VANDESTREEK,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | Civil Action No. 7:13-CV-001-O-BL |
| | § | |
| | § | |
| **CAROLYN W. COLVIN,** | § | |
| **Acting Commissioner of Social Security,** | § | |
| | § | |
| **Defendant** | § | Referred to U.S. Magistrate Judge |

**REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to 42 U.S.C. § 405(g), Plaintiff Monique Vandestreek seeks judicial review of the Commissioner of Social Security's decision, which denied her applications for supplemental security income (SSI) and disability benefits under Titles II and XVI of the Social Security Act.

After considering the pleadings, the briefs, and the administrative record, the Court recommends the Commissioner's decision be reversed and remanded for further consideration.

**Statement of the Case**

Following a hearing on April 25, 2013, an Administrative Law Judge (ALJ) determined on May 28, 2013, that Vandestreek was not disabled. Specifically, the ALJ found that Vandestreek's impairments did not meet or equal any of the impairments listed in Appendix 1 of the governing regulations, that she retained the residual functional capacity (RFC) to perform a narrow range of sedentary work, and that although she was not capable of performing her past relevant work, she was capable of performing other jobs existing in significant numbers in the national economy. The

Appeals Council denied review on October 29, 2013. Therefore, the ALJ's decision is the Commissioner's final decision and is properly before the Court for review. *See Higginbotham v. Barnhart*, 405 F.3d 332, 334 (5th Cir. 2005) (stating Commissioner's final decision "includes the Appeals Council's denial of [a claimant's] request for review").

## Factual Background

Vandestreek filed an application for supplemental security income and disability insurance benefits on March 14, 2012. (Tr. 11, 140, 141). Vandestreek claims she became disabled on June 16, 2011,[1] due to diabetes, bipolar disorder, anxiety disorder, back pain, obesity, and arthritis. (Tr. 11, 13-16, 47-52, 117-20, 127-29, 144-56, 211, 311, 331, 338, 348-49, 352-53, 452, 466, 538, 545); (Doc. 15, p. 2). Previously, Vandestreek worked as a cashier, sales associate, manager, server, housekeeper, and stockperson. (Tr. 18, 40, 146, 157). Vandestreek has a high school education and attended school to become a manicurist. (Tr. 34, 146).

Vandestreek suffers from a plethora of physical and psychological issues that she claims prevent her from being gainfully employed. She reports that the ailments hinder her ability "to stand or walk for longer than a few minutes," that "bending and lifting are very difficult," and that her "panic attacks keep [her] from going out of the house alone." (Tr. 165, 182).

In June 2012, Vandestreek visited Dr. Nazanin Moosavi, M.D., for a physical consultative examination (CE). (Tr. 538-41). Dr. Moosavi noted that Vandestreek suffered from back pain, neck pain, and bilateral knee arthritis, and had a past medical history of type II diabetes, morbid obesity, chronic back pain, bipolar disorder, irregular heartbeat, and mild chronic obstructive pulmonary disease. (Tr. 538-39). Dr. Moosavi also found that Vandestreek suffered from "progressive weight gain due to inability to ambulate because of back pain." (Tr. 539). At 5 foot

---

[1] Disability application states that Vandestreek became disabled on April 1, 2010. (Tr. 117, 124).

1 inch tall and 489 pounds, Vandestreek has a body mass index (BMI) of 54.6. (Tr. 540). Based on Vandestreek's complaints, the physical exam, and the available laboratory and diagnostic data, Dr. Moosavi opined that Vandestreek had a "limited ability to sit in one position, or stand for more than 10 minutes," is "unable to lift or carry heavy objects of more than 10 pounds," had "severe pain with leg elevation, shoulder abduction and flexion," had a limited range of motion to "forward bending of 30-40 degrees," and that her weight had an impact on her gait and station. (Tr. 541). Dr. Moosavi also noted that Vandestreek had "difficulty in squatting due to pain in her back and her morbid obesity," and that she was unable to "stand on one foot for more than 10 seconds." (Tr. 541). However, Vandestreek was able to "ambulate effectively without assistive device for very limited time." (Tr. 541).

Vandestreek also visited Dr. Reda Rasco, PsyD., for a psychiatric CE. (Tr. 542-47). At the examination, Vandestreek reported that she felt depressed and anxious, and could no longer leave the house without her husband or daughter. (Tr. 542). Based on the examination, Dr. Rasco diagnosed Vandestreek with the following ailments: Bipolar I disorder, panic disorder with agoraphobia, arthritis, tear in spine, and chronic pain. (Tr. 545-46). Dr. Rasco opined that Vandestreek's prognosis was "poor and depends on her ability to obtain the necessary care for her medical problems, manage her medications, expand her social/emotional support, and develop healthy coping skills for her depression and anxiety symptoms." (Tr. 546).

Physical and mental RFC evaluations were also performed. (Tr. 562-69, 570-73). Dr. Frederick Cremona, M.D., evaluated Vandestreek's physical RFC. Dr. Cremona found that Vandestreek could occasionally lift/carry 10 pounds, frequently lift/carry less than 10 pounds, stand or walk at least 2 hours in an 8 hour workday, sit for a total of 6 hours in an 8 hour workday, push or pull an unlimited amount, other than the lift/carry limitations. (Tr. 563). Dr. Cremona

clarified that Vandestreek should be limited to standing or walking for a total of 2 hours. (Tr. 564). Dr. Cremona also found that Vandestreek could only occasionally climb ramps or stairs, could never climb ropes, ladders, or scaffolds, could occasionally balance, stoop, kneel, and crouch, and should never crawl. (Tr. 564). In terms of manipulative limitations, Dr. Cremona found that Vandestreek had a limited ability in gross manipulation, and reaching in all directions. (Tr. 565). Vandestreek had no visual, environmental, or communicative limitations. (Tr. 565-66).

In the mental RFC assessment, Dr. Michael O'Callaghan, Ph.D, determined that Vandestreek was "able to understand, remember, and carry out detailed but not complex instructions, make decisions, concentrate for extended periods, interact w[ith] others, and respond to changes." (Tr. 572). Dr. O'Callaghan found that Vandestreek's alleged limitations were only partially supported by the evidence on record.

### Standard of Review

A person is disabled if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 1382c(a)(3)(A), 423(d)(1)(A) (2012). Additionally, a claimant is disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); *see* 20 C.F.R. §§ 404.1505, 416.911. "'Substantial gainful activity' is work activity involving significant physical or mental abilities for pay or profit." *Masterson v. Barnhart*, 309 F.3d 267, 271 n.2 (5th Cir. 2002); 20 C.F.R. § 404.1572(a)-(b) (2013).

To evaluate a disability claim, the Commissioner follows "a five-step sequential analysis to determine whether (1) the claimant is presently working; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in Appendix 1 of the Social Security Regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other substantial gainful activity." *Audler v. Astrue*, 501 F.3d 446, 447–48 (5th Cir. 2007); *see also* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The claimant bears the burden of showing he is disabled through the first four steps of the analysis; on the fifth, the Commissioner must show that there is other substantial work in the national economy that the claimant can perform." *Audler*, 501 F.3d at 448. Before proceeding to Steps 4 and 5, the Commissioner must assess a claimant's RFC. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). RFC is defined as "the most [a claimant] can still do despite [the claimant's] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

This Court's review of the Commissioner's decision to deny disability benefits is limited to an inquiry of whether substantial evidence supports the Commissioner's findings, and whether the Commissioner applied the proper legal standards. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002) (citing *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000)). Substantial evidence "is more than a mere scintilla and less than a preponderance" and includes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Masterson*, 309 F.3d at 272; *Watson v. Barnhart*, 288 F.3d 212, 215 (5th Cir. 2002). To determine whether the Commissioner's decision is supported by substantial evidence, the Court weighs four elements of proof: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the Claimant's subjective evidence of pain and disability; and (4) the claimant's age, education, and work history. *Martinez v. Chatter,* 64 F.3d 172, 174 (5th Cir. 1990); *Wren v.*

*Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991). If substantial evidence supports the Commissioner's findings, then the findings are conclusive and the court must affirm the Commissioner's decision. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 390, 91 S. Ct. 1420, 1422, 28 L. Ed. 2d 842 (1971); *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000). The court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for the Commissioner's, even if the court believes that the evidence weighs against the Commissioner's decision. *Masterson*, 309 F.3d at 272. Moreover, "'[c]onflicts in the evidence are for the Commissioner and not the courts to resolve.'" *Id.* (quoting *Newton*, 209 F.3d at 452).

## Discussion

Vandestreek argues that the ALJ (1) failed to properly define the frequency of the sit/stand option in the RFC determination and in the hypothetical to the VE, (2) failed to properly assign or explain the weight given to Dr. Moosavi's report, especially the need for an assistive device in ambulating, (3) failed to address the RFC limitations on overhead reaching, bending, or handling, and (4) improperly considered the functional effects of her obesity. (Doc. 14).

After reviewing the record, the ALJ followed the five-step sequential evaluation process and determined that Vandestreek was not disabled within the meaning of the Social Security Act. (Tr. 11-20). At Step 1, the ALJ found that Vandestreek did not engage in substantial gainful activity since June 16, 2011. (Tr. 13). At Step 2, the ALJ found that Vandestreek had the following severe impairments: "diabetes mellitus, obesity, lumbar disc disease, arthritis, bipolar disorder[,] and anxiety disorder." (Tr. 13). At Step 3, the ALJ found that Vandestreek did not have an impairment or combination of impairments that met or equaled a listed impairment under the applicable regulations. (Tr. 13). Before proceeding to Steps 4 and 5, the ALJ assessed Vandestreek's RFC and determined that she retained the ability to

> Lift and carry no more than 10 pounds occasionally, sit for 6 hours in an 8-hour day, stand and/or walk for 1 hour each in an 8-hour day or a total of 2 hours. She requires the ability to sit or stand at will. She can occasionally crouch, kneel, balance, stoop[,] and climb stairs or ramps, but never crawl or climb ladders ropes[,] or scaffolds. She can understand, remember and carry out detailed but not complex instructions. She can have limited interaction with others but she can make decisions and concentrate and respond to changes.

(Tr. 15-18). At Step 4, the ALJ determined that Vandestreek was unable to perform any past relevant work. (Tr. 18). Finally, at Step 5, the ALJ found Vandestreek could perform other work that existed in significant numbers in the national economy, and thus, she was not disabled. (Tr. 18-19).

### A. The ALJ Properly Defined the Sit/Stand Option in The RFC Determination but Posed an Improper Hypothetical to the VE

The ALJ properly defined the frequency of the sit/stand option in the RFC determination. The ALJ stated that Vandestreek required the "ability to sit or stand *at will*." (Tr. 16) (emphasis added). Although the ALJ did not specify a time, the language "at will" implies that a claimant is in control of the frequency of her sitting and standing. *See Ketelboeter v. Astrue*, 550 F.3d 620, 626 (7th Cir. 2008); *see Williams v. Barnhart*, 140 Fed. App'x 932, 937 (11th Cir. 2005) ("Although the ALJ failed to specify the frequency that Williams needed to change his sit/stand position, the reasonable implication of the ALJ's description was that the sit/stand option would be at Williams's own volition."); *Garrison v. Colvin*, No. 5:12-CV-172-C, 2013 WL 4082870 at *3 (N.D. Tex. Aug. 13, 2013) (citing *Ketelboeter*, 550 F.3d at 626 and *Wright v. Astrue*, No. 1:09-CV-0003, 2012 WL 182167, at *8 (M.D.N.C. Jan 23, 2012)).

Although the ALJ was not required to define the frequency of the sit/stand option in his hypothetical to the VE (as long as it was apparent that the hypothetical individual could change positions at her own volition), the phrasing of the hypothetical is somewhat obscure. At the hearing, the ALJ asked the VE if a hypothetical individual, with the functional limitations of

Vandestreek could perform any jobs in the regional or national economy. (Tr. 40-41). In regards to the sit/stand option, the ALJ stated that the hypothetical individual can "sit or stand at her option at her work station." (Tr. 40). The VE then requested clarification on the amount of sitting and standing the hypothetical individual could endure during the workday:

> [VE]: Judge Gordon, just to clarify. You said that the individual could sit for up to six hours a day and stand and walk for a combination of up to one hour per day, is that correct?
>
> [ALJ]: One hour each.
>
> [VE]: One hour each. Okay, for a total of 8—
>
> [ALJ]: so 15 minutes standing four times a day.

(Tr. 41). After this exchange, the VE opined that the hypothetical individual could perform work as a scanner, addresser, and product inspector. (Tr. 41).

In his opening remarks, Vandestreek's attorney drew attention to Dr. Moosavi's report which stated a "necessity to sit and stand every 10 minutes with employment." (Tr. 31). The attorney went on to argue that the "frequency [of the sit/stand option] would detract from an individual's ability to attend and concentrate if they were having to change positions that frequently throughout a given shift, ultimately making them unable to maintain the pace and consistency that is necessary" for employment. (Tr. 32). On cross-examination, Vandestreek's attorney highlighted the need to alternate between sitting and standing every 10 minutes, and asked the VE if such a requirement would diminish the hypothetical person's ability to perform the identified jobs. (Tr. 42). To this question, the VE responded that he had "never really considered the frequency of sitting and standing," and then agreed with Vandestreek's attorney that the identified jobs that could still be performed (scanner, addresser, and product inspector), required constant handling, reaching, and feeling, and a sit/stand option where an individual had to make use of both hands to change positions "would be a factor that *could* preclude all work." (Tr. 42-43

(emphasis added)).

Hypothetical questions to a vocational expert need only include the limitations the ALJ finds the record supports. *Materson v. Barnhart*, 309 F.3d 267, 273 (5th Cir. 2002). A hypothetical question posed to a VE is defective and cannot be relied upon unless: (1) the hypothetical reasonably incorporates "all disabilities of the claimant recognized by the ALJ," and (2) "the claimant or his representative is afforded the opportunity to correct deficiencies in the ALJ's question by mentioning or suggesting to the [VE] any purported defects in the hypothetical questions (including additional disabilities not recognized by the ALJ's findings and disabilities recognized but omitted from the question)." *Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994); *Boyd v. Apfel*, 239 F.3d 698, 707 (5th Cir. 2001); *Glover v. Barnhart*, 81 Fed. App'x 513, 514-15 (5th Cir. 2003) ("Contrary to [claimant's] contentions, the hypothetical questions posed to the [VE] by the ALJ were not defective, as the questions reasonably incorporated all of the disabilities recognized by the ALJ. . . . Counsel was also given the opportunity to suggest to the VE additional disabilities, including [ones] not recognized by the ALJ's findings."); *Guillen v. Astrue*, 584 F. Supp. 2d 930, 939 (W.D. Tex. 2008). Both conditions must be met in order to avoid reversible error. *Bowling*, 36 F.3d at 436. Thus, "[o]nly where the testimony by the VE is based on a correct account of a claimant's qualifications and restrictions, may the ALJ properly rely on the VE's testimony and conclusion." *Guillen*, 584 F. Supp. 2d at 940. The assumptions made by the VE must be adequately supported by the evidence in the record. *Bowling*, 36 F.3d at 436; *Guillen*, 584 F. Supp. 2d at 940.

Here, it is unclear whether the VE was able to properly evaluate the limitations of the hypothetical individual in arriving at his decision. Although the ALJ stated that the hypothetical individual could "sit or stand at her option at her work station," the subsequent exchange between

the ALJ and the VE and the VE and Vandestreek's attorney suggests that the VE did not completely understand he exertional limitations of the hypothetical individual. What is most problematic is the VE's cross examination, where he admits that he did not consider the frequency of the sit/stand option. (Tr. 42). Thus, the hypothetical posed to the VE did not reasonably incorporate all of Vandestreek's disabilities, making the hypothetical inherently defective. As such, the ALJ could not rely upon the VE's testimony, and the ALJ's findings at Step 5 were not supported by substantial evidence. Therefore, the Court recommends remand on this issue.

### B. The ALJ was not Required to Make Specific Findings of the Consultative Examiner's Opinion

Vandestreek next argues that the ALJ failed to properly assign or explain the weight given to Dr. Moosavi's report. (Doc. 14, p. 6-10). Specifically she argues that the ALJ failed to expressly state whether he accepted or rejected Dr. Moosavi's assessment that Vandestreek may need an assistive device to ambulate for periods longer than 10 minutes. (Doc. 14, p. 8); (Tr. 541). Vandestreek also argues that if the ALJ rejected that assessment, he was "required to explain his reasons for doing so." (Doc. 14, p. 10).

"The ALJ as factfinder has the sole responsibility for weighing evidence and may choose whichever physician's diagnosis is most supported by the record." *Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991) (quoting *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987)). Weighing the evidence and determining the relative weight to be given to the pieces evidence is reserved for the ALJ. *Chambliss v. Massanari*, 269 F.3d 520, 523 (5th Cir. 2001); *Gray v. Astrue*, No. 1:09-CV-0101-BI, 2011 WL 856941, at *5-6 (N.D. Tex. 2011). The ALJ also has considerable discretion in assigning weight to medical opinions and may reject the opinion of a physician when the evidence supports a contrary conclusion. *Newton v. Apfel*, 209 F.3d 448, 455-56. (5th Cir. 2000); *See* 20 C.F.R. § 404.1527(d). The ALJ is "not required to accept any medical evidence *in*

*toto*, rather, [the ALJ's] RFC determination is based upon the evidence as a whole." *Gray*, 2011 WL 856941, at *6. State agency medical and psychological consultants are regarded as experts in social security disability cases and their opinion can be afforded great weight if supported by the evidence in the record. 20 C.F.R. § 404.1527(b); SSR 96-6p.

Further, it is well-established that an ALJ can consider all the evidence in the record without directly addressing each piece of evidence in his opinion. *Ramirez v. Colvin*, No. 2:12-CV-262, 2014 WL 1293888, at *10 (N.D. Tex. Mar. 28, 2014) (citing *McFadden v. Astrue*, 465 Fed. App'x. 557, 559 (7th Cir. 2010) ("an ALJ. . . need not discuss every piece of evidence in the record")); *Black v. Colvin*, No. 2L12-CV-0233, 2014 WL 1116682, at *5 (N.D. Tex. Mar. 20, 2014); *Jefferson v. Barnhart*, 356 F. Supp.2d 663, 675 (S.D. Tex. Mar. 12, 2004) ("in interpreting the evidence and developing the record, the ALJ need not discuss every piece of evidence"); *Loral Defense Systems-Akron v. N.L.R.B.*, 200 F.3d 436, 453 (6th Cir. 1999) ("an ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party."). Thus, as long as the ALJ's opinion shows a clear basis of his assessment, further discussion is not required. *Black*, 2014 WL 1116682, at *2 (citing *Penalver v. Barnhart*, No. SA-04-CA-1107-RF, 2005 WL 2137900, at *6 (W.D. Tex. Jul. 13,2005) ("[t]he ALJ may not have discussed all of the evidence in the record to the extent desired by Plaintiff, but the ALJ is only required to make clear the basis of his assessment—he need not discuss all supporting evidence or evidence rejected.")).

The ALJ was not required to make specific findings regarding Dr. Moosavi's report, as Vandestreek suggests. Nor was the ALJ required to discuss every part of Dr. Moosavi's report. As outlined above, it is wholly within the ALJ's province to consider and weigh the relevant evidence. The ALJ clearly considered Dr. Moosavi's report, as evinced by the discussion in his opinion. (Tr.

17). Additionally, the record does not indicate that Vandestreek was ever prescribed an assistive device, nor does she argue that she regularly makes use of an assistive device to ambulate.

Vandestreek relies on *Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994), and *Myers v. Apfel*, 283 F.3d 617, 621 (5th Cir. 2001), to argue ALJ error. These cases, however, are inapplicable to her case. *Falco*, states, in relevant part, that "when the evidence clearly favors the claimant, the ALJ must articulate reasons for rejecting the claimant's subjective complaints of pain." 27 F.3d at 163. Reliance on *Falco* is misplaced because here, the evidence does not clearly show that Vandestreek requires an assistive device for ambulation. Likewise, reliance on *Myers* is also misguided. In *Myers*, the Fifth Circuit reversed and remanded when the ALJ failed to make appropriate findings in rejecting a treating physician's opinion. 283 F.3d at 621. Dr. Moosavi was not Vandestreek's treating physician, she was a "nontreating source."[2] 20 C.F.R. §§ 404.1502, 416.902. Thus, the treating physician rule discussed in *Myers* does not apply in this case.

### C. The ALJ Erred in his RFC Determination

Vandestreek also argues that the ALJ failed to include RFC limitations in overhead reaching, bending, or handling. (Doc. 14). The state agency medical consultant, Dr. Cremona, opined that Vandestreek was limited in reaching all directions, including overhead reaching, and in gross manipulation and handling. (Tr. 565). Dr. Cremona cited pain with range of motion and limitation of range of motion bilaterally, and very limited internal and external rotation of the shoulders. (Tr. 568). However, he stated that Vandestreek did not have limited range of motion in her wrists, fingers, or elbows. (Tr. 568). Dr. Moosavi's report indicates that Vandestreek had some pain with bending and had limited range of motion in her upper extremities. (Tr. 538, 540). The

---

[2] A "nontreating source" is a "physician, psychologist, or other acceptable medical source who has examined [a claimant] but does not have, or did not have, an ongoing treatment relationship with [the claimant]. The term includes an acceptable medical source who is a consultative examiner for [the Social Security Administration], when the consultative examiner is not [the claimant's] treating source." 20 C.F.R. §§ 404.1502, 416.902.

report also shows that Vandestreek experienced severe pain with shoulder abduction and flexion, and limited range of motion in her back. (Tr. 541). Dr. Moosavi also opined that Vandestreek had good coordination and dexterity, no loss of motion in hands or fingers, had normal grip strength, and a normal ability to reach and handle objects at the shoulder level, and that any reaching higher than shoulder level caused severe pain. (Tr. 541). Vandestreek claims that since the "ALJ's RFC finding and hypothetical question [to the VE] address[] none of these limitations," and that because the VE agreed that the product inspector job requires "constant handling," the ALJ's findings are not supported by substantial evidence. (Tr. 42); (Doc. 14, p 10-11). Vadestreek further argues that because the ALJ gave Dr. Cremona's RFC assessment "great weight," the ALJ should have included the limitations described therein (limited reaching in all directions, including overhead reaching, and limited gross manipulation and handling), and the failure to do so is reversible error. (Doc. 14, p. 10-11).

The social security regulations state that an individual's RFC represents "the most [she] can still do despite [her] limitations." 20 C.F.R. §§ 404.1545, 416.945. The ALJ considers all relevant medical and other evidence in assessing an individual's RFC. *Id.*; *see also Hollis v. Bowen*, 837 F.3d 1378, 1386-87 (5th Cir. 1988) (holding that a RFC determination is made by considering medical opinions and statements made by the individual applicant). The determination of a claimant's RFC is reserved for the ALJ alone. 20 C.F.R. § 404.1547(d)(2); SSR 96-6p, 1996 WL 374180 (Jul. 2, 1996); *Villa v. Sullivan*, 895 F.2d 1019, 1023 (5th Cir. 1990). To evaluate a claimant's RFC, the ALJ must consider the limiting effects of all the claimant's impairments, even those that are not severe. 20 C.F.R. § 404.1545(e). The ALJ may also consider evidence such as observations of limitations by the claimant's treating or examining physicians, psychologists, family, friends, or other persons. 20 C.F.R. § 404.1545(a). Such evidence is considered along with

the medical evidence to determine the extent of a claimant's limitations. *Id*. Still, an ALJ has considerable discretion in assigning weight to medical opinions and may reject the opinion of any physician when the evidence supports a contrary conclusion. *Newton*, 209 F.3d at 455-56. An ALJ may rely on a nonexamining physician's assessment when the assessment is based upon a careful evaluation of the medical evidence and does not contradict those of the examining physician. *Carrier v. Sullivan*, 944 F.2d 243, 246 (5th Cir. 1991) (citing *Villa v. Sullivan,* 895 F.2d 1019, 1024 (5th Cir. 1990)). Accordingly, the ALJ considers medical opinions, together with the other evidence, to determine whether a claimant is disabled. *See* 20 C.F.R. § 404.1527(b).

Here, the ALJ gave Dr. Cremona's RFC opinion "great weight." (Tr. 17). He also gave "some weight" to Dr. Moosavi's opinion. (Tr. 17). Although ALJs are "not bound by any findings made by state agency medical . . . consultants . . . or other program physicians," 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(3)(2)(i); *Alejandro v. Barnhart*, 291 F. Supp.2d 497, 515, (S.D. Tex. 2003), an ALJ errs when he does not reasonably incorporate all of the disabilities of the claimant in his RFC determination. *See Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994). Here, the two opinions the ALJ relied on seem to suggest that Vandestreek had at least some limitations in overhead reaching, bending, or handling. While it is within the province of the ALJ to determine Vandestreek's RFC, it is apparent that the ALJ failed to reasonably incorporate all of her disabilities in the RFC evaluation. Thus, the Court recommends remand to further evaluate Vandestreek's RFC.

### D. The ALJ Improperly Considered Vandestreek's Obesity

Last, Vandestreek alleges that the ALJ improperly considered the functional effects of her obesity. (Doc. 14, p. 11-13). She further argues that the ALJ failed to accord proper weight to the findings of the consultative examiner, Dr. Moosavi. (Doc. 14, p. 11-13). Vandestreek claims that

the ALJ was required to expressly state which of Dr. Moosavi's findings were accepted and which were rejected, accompanied by proper reasons for doing so. (Doc. 14, p. 13).

Social Security Ruling (SSR) 02-1P places obese individuals in three categories based on their BMI. SSR 02-1P, 2000 WL 628049 at *2. Level I obesity includes BMIs of 30.0-34.9; Level II includes BMIs of 35.0-39.9; and Level III, or "extreme" obesity, includes BMIs that are greater than or equal to 40. SSR 02-1P, 2000 WL 628049 at *2. Individuals falling in the Level III category are at the "greatest risk for developing obesity-related impairments." SSR 02-1P, 2000 WL 628049 at *2. Obesity must be considered at Steps 2-5 of the sequential evaluation process. SSR 02-1P, 2000 WL 628049, at *3; *Campos v. Astrue*, No. 5:08-CV-115-C, 2009 WL 1586194 at *3-4 (N.D. Tex. Jun 8, 2009); *Johnson v. Astrue*, No. H-08-3658, 2010 WL 148411 at *17-18 (S.D. Tex. Jan 11, 2010). The ALJ must consider the effects of obesity in conjunction with the other medically determinable impairments. *Thompson v. Astrue*, 232 Fed. App'x 421, 424 (5th Cir. 2007); SSR 02-1P, 2000 WL 628049. When determining a claimant's RFC, the ALJ should assess the "effect obesity has upon the individual's ability to perform routine movement and necessary physical activity within the work environment." SSR 02-1P, 2000 WL 628049 at *6. The ALJ must explain how he reached the conclusions on whether obesity caused any limitations. SSR 02-1P, 2000 WL 628049 at *7.

Dr. Moosavi calculated Vandestreek's BMI at 54.6, placing her in the Level III obesity category. (Tr. 540). Although the ALJ considered obesity at Steps 2 and 3, it is unclear whether obesity—either alone or in conjunction with other comorbid ailments—was considered when determining Vandestreek's RFC or at Steps 4 and 5. (*See* Tr. 15-19). Indeed, there is no mention of obesity, the limitations it may or may not have caused, or its effect upon Vandestreek's ability to "perform routine movement and necessary physical activity within the work environment." SSR

02-1P, 2000 WL 628049 at *6; (*See* Tr. 15-19). Even if these considerations were indirectly addressed, the analysis provided in the ALJ's opinion runs afoul to SSR 02-1P's imperatives. Based on the foregoing, the Court recommends remand on this issue.

As an aside, the Court notes that Vandestreek's contentions that the ALJ improperly gave Dr. Moosavi's opinion "some weight" are misplaced.[3] Likewise, the ALJ need not have discussed every finding contained in Dr. Moosavi's opinion, as Vandestreek suggests.[4] Nor was the ALJ required to justify any rejection of Dr. Moosavi's findings.

## Conclusion

Because the ALJ's findings at Step 5 and the RFC determination were not supported by substantial evidence, and because the ALJ failed to properly evaluate the functional effects of Vandestreek's obesity, the Court **RECOMMENDS** that the decision of the Commissioner be **REVERSED** and **REMANDED** for further consideration.

**IT IS ORDERED** that this case is **TRANSFERRED** back to the docket of the United States District Judge.

A copy of this Report and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this Report and Recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C.

---

[3] It is within the ALJ's province as factfinder to review the available evidence to determine the appropriate weight to be given to each piece of evidence. *Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991) (quoting *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987)). An ALJ also has broad discretion in assigning weight to medical opinions. *Newton v. Apfel*, 209 F.3d 448, 455-56. (5th Cir. 2000); *See* 20 C.F.R. § 404.1527(d).

[4] While the ALJ is required to consider all the evidence on the record, he is not obligated to directly address each piece of evidence in his opinion. *Ramirez v. Colvin*, No. 2:12-CV-262, 2014 WL 1293888, at *10 (N.D. Tex. Mar. 28, 2014) (citing *McFadden v. Astrue*, 465 Fed. App'x. 557, 559 (7th Cir. 2010) ("an ALJ. . . need not discuss every piece of evidence in the record")); *Black v. Colvin*, No. 2L12-CV-0233, 2014 WL 1116682, at *5 (N.D. Tex. Mar. 20, 2014); *Jefferson v. Barnhart*, 356 F. Supp.2d 663, 675 (S.D. Tex. Mar. 12, 2004) ("in interpreting the evidence and developing the record, the ALJ need not discuss every piece of evidence"); *Loral Defense Systems-Akron v. N.L.R.B.*, 200 F.3d 436, 453 (6th Cir. 1999) ("an ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.").

§ 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

**SO ORDERED**.

Dated this 2nd day of March, 2015.

_____

**E. SCOTT FROST**
**UNITED STATES MAGISTRATE JUDGE**